## J. T. FAULK v. THE STATE.

### No. 1263. Decided June 23, 1897.

**1. Swindling—Indictment.**

An indictment for swindling, which alleged that the fraudulent representations were made to one C., and that he was the owner of the money obtained, and that he was the owner of Jones County Bank, sufficiently alleges that the party swindled was an individual; and it was unnecessary to allege that the bank was a corporation, a joint stock company, or a copartnership. Nasets v. State, 32 S. W. Rep., 698, distinguished.

**2. Same—Allegation of Exchange of Property.**

Where, in connection with the allegation of the false pretenses, it was alleged in the indictment that defendant "did then and there induce the said C. to exchange his said three hundred dollars in money for a draft," etc.; Held, this was a distinct allegation of an exchange of property, and was sufficient.

**3. Swindling by Means of a Worthless Draft—Amount Received by Defendant—Charge.**

The indictment charged, that appellant received $300 upon a worthless or fraudulent draft for that amount upon a foreign bank. The proof was, that defendant represented that he had $300 in the foreign bank; the prosecutor agreed to collect the same. Defendant drew the draft for $300, but the prosecutor only gave him $25 in money and entered up $275 to his credit, giving him a certificate of deposit for that amount; and in a day or so thereafter paid a check drawn by defendant for $12.50, the total amount received by defendant being $37.50. Held, the proof was of a character to demand of the trial court a charge to the effect that, if the $300 was not absolutely and unconditionally transferred from defendant to the prosecutor, but the transaction was merely a collection and an advance by prosecutor of the money, less than $50, to defendant, that then the defendant could only be convicted of a misdemeanor.

**4. Same—Evidence—Checks Drawn by Defendant.**

On a trial for swindling by means of a worthless draft, upon which defendant had procured the entry of a credit in his behalf for $275, drafts drawn by him upon said money were admissible as evidence to show that he exercised ownership, control, and dominion over the said $275.

APPEAL from the District Court of Jones. Tried below before Hon. ED J. HAMNER.

Appeal from a conviction for swindling; penalty, two years imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*Christenberry & Colbert,* for appellant.—The indictment was fatally defective. 1. It failed to allege in what capacity the said R. V. Colbert was conducting a banking business business; whether in an individual capacity or as a corporation. Nasets v. State, 32 S. W. Rep., 698. 2. It failed to allege that the draft was delivered to, and accepted by, R. V. Colbert. Lutton v. State, 14 Texas Crim. App., 518.

The facts showing that defendant only obtained $25 in money at the time of the alleged swindle, the special requested instruction, on an offense less than a felony, should have been given.

Where the draft only gave the drawer a credit in the bank charged to have been swindled, and such draft so drawn was dishonored, and the drawer obtained only a part of the amount of the draft, he could only be prosecuted for the amount he obtained before the draft was returned dishonored.

Appellant only obtained $25 on the draft at the time it was drawn, and afterwards $12.50, by virtue of a check drawn on said bank in favor Geo. Castles. This was the full amount obtained on such credit, making in all $37.50.

*Mann Trice,* Assistant Attorney-General, for the State.

[No briefs found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of swindling, and his punishment assessed at two years confinement in the penitentiary, and prosecutes this appeal.

There is nothing in appellant's motion to the jurisdiction of the court, and requiring his case to be transferred to the County Court. The indictment, on its face, shows a felony, and not a misdemeanor.

Appellant made a motion to quash the indictment on the ground that it fails to charge an offense; his motion to quash being predicated on the failure of the indictment to charge whether said bank was a corporation, a partnership, or an individual. The case cited by appellant, Nasets v. State, 32 S. W. Rep., 698, has no application to this case. In that case the name was not of an individual, but such as might be applied to a corporation, a joint-stock company, or a copartnership; and we simply held in that case that under such circumstances it should be alleged whether the bank was a corporation, a joint-stock company, or an individual. In this the allegation is that the fraudulent representations were made to R. V. Colbert, that he was the owner of the money obtained, and that he was the owner of the Jones County Bank.

There was also a motion to quash the first count in the indictment because no trade or exchange was alleged in connection with the false representations. The allegation in that regard is as follows: "Said J. T. Faulk did then and there falsely pretend and fraudulently represent to the said R. V. Colbert that he, the said J. T. Faulk, then had three hundred dollars of money in the National Bank of Wilmington, in Wilming-

ton, North Carolina, and did thereby then and there fraudulently induce
the said R. V. Colbert to exchange his said three hundred dollars of
money for a draft then and there drawn by the said J. T. Faulk on said
National Bank of Wilmington." (Then follows a description of the
draft.) In support of this contention, we are referred to the case of
Lutton v. State, 14 Texas Crim. App., 518. In that case it was very clear
that no trade or delivery of the check or draft which was a part of the
false pretense was alleged, and the court say: "We are of opinion that
the motion to quash the indictment should have been sustained, because
it is nowhere alleged in the indictment that the check or draft was deliv-
ered to or accepted by Baker and Burrows as a consideration upon which
they loaned the money to the appellant." A number of cases are
referred to in that decision to sustain the action of the court in quashing
the indictment. In Cummings v. State 36 Texas Crim. Rep., 152, that
case was followed; and it was reversed because the indictment failed to
show that there was any trade or delivery of the diamond pin by Cum-
mings to Cohen, on which the $75 was alleged to have been obtained.
The authorities which have been followed by this court go to the extent
of holding that bare representations made in regard to property are not
enough; that in connection with such representations in regard to prop-
erty, its ownership, or quality, which are alleged to be false, and upon
which the party is alleged to have procured the money or other property,
it must be shown by the indictment that there was a sale or exchange of
the property in question. As was said in State v. Philbrick, 31 Maine,
401: "The sale or exchange ought to be set forth in the indictment, and
that the false pretenses should be alleged to have been made with the
view of effecting such sale or exchange, and that by reason thereof the
party was induced to buy or exchange, as the case may be." In none of
the cases in which the indictment was quashed was the allegation such as
is found in this case. Here it is alleged in connection with the false pre-
tenses, "that the said J. T. Faulk did thereby then and there fraudu-
lently induce the said R. V. Colbert to exchange his said three hundred
dollars in money for a draft," etc. This is a distinct allegation of an
exchange, and, in our opinion, was sufficient. Nasets v. State, 32 S. W.
Rep., 698.

The second count in the indictment seems to have been ignored by the
court, and the prosecution proceeded to a conviction solely upon the first
count, and the case must stand or fall upon that count. The indictment
charges that appellant obtained $300 of current money of the United
States by means of false pretenses, which were, substantially, that he
had $300 in the National Bank of Wilmington. The State showed that
he received in cash at the time $25. It also showed that Colbert, the
proprietor of the bank, entered up a credit of $275, and gave him a slip
certificate of deposit for that amount. The court in its charge treats the
transaction as the obtention of $300 in money, and the charge given by
the court alone presents that phase of the case. Appellant asked the
court to charge a misdemeanor; that is, if appellant only received $25,

and not over $50, in money, by means of the false representations, to find him guilty only of a misdemeanor. This the court refused to give, and appellant reserved his bill of exceptions. Certainly, if the facts showed that on the presentation of the draft on the Wilmington Bank the prosecutor, Colbert, had handed out $300 in money, and defendant had reserved out of that amount $25, and handed the prosecutor $275 as a deposit, he would have actually received all of said $300, and the question here presented would not have arisen. If appellant had sold the check in question, had discounted it with the prosecutor, and the prosecutor had passed to his credit $300, we are inclined to the opinion that the prosecution could have been maintained as a felony, though in fact no money was actually passed over the counter. But the shape of this transaction was different. It appears from the State's evidence that the prosecutor first proposed to appellant (he having informed him that he had some $300 in the National Bank of Wilmington) to bring his money to Texas and put the same in his bank; that the collection and transfer would not cost him anything, if he would keep his account with him. Appellant acquiesced in this, and the draft was drawn in favor of the prosecutor, who at first advanced $10 on it, but suggested to the prosecutor that that might not be sufficient for his demands, as he was going to Abilene, and the prosecutor then gave him $25 of the amount. It seems that the next day a check for $12.50 was drawn against this deposit in favor of a party living in Anson, which was paid. In a short time other drafts were drawn against this deposit, which the prosecutor refused to pay, and then telegraphed to the National Bank of Wilmington, and was informed that appellant had no money in said bank. Now, from the State's own testimony the proof tends to show, not an absolute and unconditional transfer of the $275 to the prosecutor, but the real transaction appears to have been the collection of the Wilmington draft by the prosecutor, and in advancing $25 on that draft at the time, and in a day or two thereafter paying an additional check of $12.50. How the prosecutor regarded it is evidenced from the fact that he refused to honor other drafts of the appellant; and we take it from the record in this cause, that if the appellant, at the time of the original transaction, had demanded the entire $300, the prosecutor would have refused to turn it over to him. However that may be, as stated before, the testimony tends to show a transaction by which the prosecutor undertook to collect and transfer from the Wilmington Bank $300, the appellant representing that he had $300 in said Wilmington Bank, and that he advanced him only $25 on account of said transaction, and paid a check of $12.50 a few days thereafter. The proof was unquestionably sufficient to have demanded of the trial court a charge to the effect that if the $300 was not absolutely and unconditionally transferred to the appellant by the prosecutor, but the real transaction was merely a collection by the Jones County Bank of $300 from the Wilmington Bank on account of the appellant, and that on that account the prosecutor advanced appellant $25, if the jury should believe such to be the fact, in that event they

could only convict appellant of a misdemeanor. In our opinion, this phase of the case was presented, and it should have been given to the jury. Gaskins v. State (Texas Crim. App.), 38 S. W. Rep., 470. In this connection the court admitted testimony of certain drafts drawn by the appellant on the Jones County Bank, and in its charge the court limited the purpose of this testimony to show that defendant exercised ownership, control, and dominion over the $275. We think this testimony was admissible as tending to show such fact. This, however, emphasizes the view above expressed as to the right of the defendant to have the jury instructed as to a misdemeanor. For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*